# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8665 | **DATE** | 6/21/2004 |
| **CASE TITLE** | Oak Creek Plaza vs. America's Best Contacts | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendant's motion for summary judgment (14-1) and plaintiff's motion for leave to amend (20-1,2). The case is set for a status hearing on 6/29/04 at 9:30 a.m. for the purpose of setting a prompt trial date. Trial counsel are directed to appear.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 28 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| OR | courtroom deputy's initials | 2004 JUN 27 AM 11:18 | mailing deputy initials | |
| | | Date/time received in Central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OAK CREEK PLAZA, LTD. and<br>OAK CREEK PLAZA, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICA'S BEST CONTACTS &<br>EYEGLASSES, INC.,<br><br>    Defendant. | Case No. 02 C 8665 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Oak Creek Plaza, Ltd. and Oak Creek Plaza, LLC (collectively "Oak Creek"), the owner of a shopping center, have sued America's Best Contact & Eyeglasses, Inc. ("ABC"), for damages allegedly arising from ABC's claimed breach of a lease for a retail store at the shopping center. ABC has moved for summary judgment. For the reasons stated below, the Court denies ABC's motion.[1]

### Facts

Oak Creek owns a shopping center in Mundelein, Illinois called Oak Creek Plaza. Starting in 1991, ABC leased space at the shopping center under a written lease. The lease expired on April 30, 2002.

---

[1] The Court's jurisdiction is based on diversity of citizenship. As disclosed by a submission made by Oak Creek after the Court ordered it to show cause why the case should not be dismissed, the limited partners and members of the plaintiff entities are citizens of Illinois, and defendant is a citizen of New Jersey and Delaware.

On October 8, 2001, Oak Creek sent a letter to ABC stating that another party had expressed interest in entering leasing the space occupied by ABC and asking whether ABC intended to continue operations after its lease expired. If so, Oak Creek stated in the letter, it would negotiate a renewal lease. ABC did not respond to the letter.

The other party referenced in Oak Creek's letter was Leisure World, an existing tenant at the shopping center that wanted to expand into the space occupied by ABC. Having heard nothing from ABC, in February 2002, Oak Creek made an oral agreement with Leisure World to enter into a written lease for ABC's space once ABC's lease expired on April 30. Oak Creek agreed to demolish the wall between the space occupied by ABC and Leisure World's existing space so that Leisure World could use the space starting no later than June 1 to display goods for its summer selling season. Oak Creek says that Leisure World ordered additional inventory on the expectation that it would have the extra space available.

Oak Creek contends it advised ABC in March and April 2002 that it had promised the space to Leisure World at the conclusion of ABC's lease term and also of the damage that would be sustained if ABC did not vacate the space when its term ended. ABC disputes this, denying it was told that Oak Creek had promised the space to Leisure World, and contending that it was told it could remain in the space for another 30 to 90 days. During the third week of April 2002, ABC's general counsel Paul Halpern visited the shopping center. After his visit, Halpern told Oak Creek's chief executive officer Ronald Boorstein that ABC would not be opening another store in the area and would vacate the space at the shopping center as soon as its operations permitted. Halpern agreed to provide a date certain for ABC's departure in return for an agreement by Oak Creek to hold ABC liable only for base rent. Boorstein did not commit to the proposal and said he was reserving all of Oak Creek's rights.

On May 15, 2002, ABC sent Oak Creek a letter stating that ABC would surrender possession of the store at midnight on June 2. On May 21, Oak Creek sent ABC a letter stating that it would hold ABC liable under its lease for additional rent due while it was holding over and for other damages for which it was responsible. ABC vacated the space on June 2, but because its personnel left the keys with one of Leisure World's employees, Oak Creek did not obtain the keys until June 4.

ABC paid $5,730.59 as rent for the month of May and the first two days of June. It is unclear when ABC paid this sum or how it determined the amount of this payment. On September 25, 2002, Oak Creek sent ABC a letter stating that the lease provided for a month-to-month tenancy for holding over, and that the total amount due for May and June rent was $13,844.40; it claimed ABC still owed $8,113.81 for rent. ABC now admits that this additional amount remains due.

In the same September 25 letter, Oak Creek demanded that ABC reimburse Oak Creek for the losses it had suffered because it was unable to deliver the store to Leisure World at the conclusion of ABC's lease term. Oak Creek stated in the letter, and contends in this case, that because ABC did not vacate the store on April 30, Leisure World had no place to store or display the extra inventory it had ordered and had to rent extra off-site warehouse space and hire additional employees to move the goods there. Because Leisure World was unable to take possession of ABC's property at the end of ABC's lease term, Oak Creek asserts, Leisure World suffered a loss of over $230,000 because of its inability to sell the extra inventory at full price. As a result, Oak Creek claims, Leisure World threatened to leave the shopping center, and to keep this important tenant Oak Creek agreed to make concessions on Leisure World's rent. In addition, Leisure World has apparently demanded compensation of an additional amount as a

condition of remaining at the shopping center.

Article 32 of ABC's lease provides as follows:

If Tenant remains in possession of the Leased Premises after the expiration or other termination of the term of this lease without a new lease reduced to writing and duly executed and delivered by Landlord and Tenant (even if Tenant shall have paid, and Landlord shall have accepted, rent in respect to such holding over), such event shall be deemed to constitute, at Landlord's Option: (a) the creation of a tenancy month to month, at a rental equal to one and one half (1 ½) times the total rental due for the last full calendar month of the term of this lease or (b) the renewal of this lease for the additional term of one (1) year at rental equal to two (2) times the total rental due for year immediately preceding such renewal; provided, however, that Landlord shall not be entitled to elect option (b) unless and until Tenant shall have so retained possession for at least ninety (90) days after the termination of this lease. Either such month to month tenancy or such additional term of one (1) year shall be subject to all covenants, conditions and agreements of this lease, except as otherwise specifically provided herein. Absent such election by Landlord, such holding over shall be an unauthorized possession and default hereunder. If Tenant fails to surrender the Leased Premises upon the termination of this lease, then Tenant shall, in addition to any other liabilities to Landlord accruing therefrom, indemnify and hold Landlord harmless from loss or liability resulting from such failure, including, without limiting the generality of the foregoing, attorneys' fees and any claims made by any succeeding tenant resulting from such failure.

## Discussion

In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The parties agree that Illinois law governs this case. Under Illinois common law, a tenant that remains in possession after his right to possession has ended is a tenant at sufferance. The landlord may evict the tenant at sufferance as a trespasser or may treat it has a holdover tenant that continues to be bound by the terms of its expired lease on a month to month basis. Once the

landlord has exercised its option, it may not alter the election. *See Brach v. Amoco Oil Co.,* 570 F. Supp. 1437, 1441 (N.D. Ill. 1983) (applying Illinois law). A landlord that demands or sues to recover holdover rent thereby elects to treat the tenant as a holdover tenant. *Wilkinson v. Johnson,* 29 Ill. 2d 392, 405, 194 N.E.2d 328, 336 (1963).

ABC contends that by demanding holdover rent in its May and September 2002 letters, Oak Creek elected to treat it as a holdover tenant and is therefore limited to recovery of unpaid rent, not consequential damages. Assuming such an election were made, Oak Creek's recovery would indeed be so limited under Illinois common law. *See Brach,* 570 F. Supp. at 1441. But there are two problems with ABC's argument. First, Oak Creek argues that the parties' contract -- the lease -- alters the common law rule and permits it to recover both holdover rent and other damages.[2] Second, as Oak Creek points out, its letters to ABC demanded other damages in addition to rent; they can be called an "election" only if the demand for rent effectively trumps the remainder of the demand. Because the letters relied on the contract, these arguments effectively collapse into one: that Article 32 of the lease permits Oak Creek to recover other damages even though it has demanded rent payments and thus treated ABC as a holdover tenant.

ABC contends that Oak Creek may hold it liable for damages other than rent under Article 32 only if it "fail[ed] to surrender the premises on the termination of its lease." As a result of Oak Creek's election to treat ABC as a holdover tenant, ABC argues, the lease did not terminate, and thus the predicate for liability for other damages never existed. The Court disagrees, both as a matter of contract interpretation and as a matter of Illinois law.

Article 32 refers to termination of the lease three times; it is reasonable to believe that each reference was intended to have the same meaning unless the context suggests otherwise or

---

[2] ABC does not contend that the common law rule cannot be altered by contract.

there is some other contrary indication – neither of which is the case here. At its outset, Article 32 refers to the Tenant remaining in possession "after the expiration or other termination of the term of this lease"; in describing one of Oak Creek's options if ABC holds over, Article 32 states that this particular option exists only if ABC has retained possession for ninety days "after the termination of this lease." It is rather obvious that both of these references denote the "termination" that occurs at the end of the stated term of the lease. The third reference is the one in question: it says that if ABC fails to surrender possession "upon the termination of the lease," it must hold Oak Creek harmless from other liabilities that result. In context it seems fairly clear that this phrase, like the other two, is meant to refer to the end of the stated term of the lease. In short, the hold harmless provision is triggered if ABC fails to surrender the premises after April 30, 2002.

ABC argues that Oak Creek's purported election to treat it as a holdover tenant means that the lease remained in effect. That is not the law in Illinois. When a tenant holds over, although it remains subject to the terms of the lease, "'[t]he holding over does not renew or extend the lease but it creates a new tenancy ....'" *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1061, 584 N.E.2d 892, 8995 (1991) (quoting *Bellows v. Ziv*, 38 Ill. App. 2d 342, 347-48, 187 N.E.2d 265, 267-68 (1962)). In other words, the lease terminated on April 30 but was replaced by a new, holdover tenancy on a month-to-month basis as provided by Article 32. But because ABC "fail[ed] to surrender the Leased P remises upon the termination of [the] lease," under Article 32 is must indemnify and hold Oak Creek harmless from other losses or liabilities resulting from the failure.

ABC also argues that the Leisure World-related damages claimed by Oak Creek are not recoverable as a matter of law. In a breach of contract action, recoverable damages are limited to

those which naturally result from the breach or are the consequence of special or unusual circumstances that were within the reasonable contemplation of the parties when they made the contract. *See, e.g., Cencula v. Keller,* 180 Ill. App. 3d 645, 650, 536 N.E.2d 93, 96 (1989). ABC contends that the concessions that Oak Creek says it was forced to make to Leisure World to compensate it for its losses and to keep Leisure World at the shopping center after it was unable to occupy ABC's space in timely fashion were not within the parties' reasonable contemplation. But Article 32 expressly contemplates the possibility of claims by succeeding tenants resulting from ABC holding over, and at a minimum this would appear to permit recovery by Oak Creek if it was required to compensate a succeeding tenant for losses it suffered due to a holdover. As for the additional concessions that Oak Creek made to Leisure World, Oak Creek argues that this was part of its effort to mitigate its damages, and that a damaged party is entitled to recover reasonable expenses incurred in attempting in good faith to minimize its losses resulting from a contractual breach. *See Toledo Peoria & Western Ry. v. Metro Waste Systems, Inc.,* 59 F.3d 637, 640 (7th Cir. 1995) (Illinois law). Under the circumstances, the Court cannot conclude that Oak Creek's claimed damages are unrecoverable as a matter of law.

Finally, Oak Creek has requested leave to amend its complaint to assert a claim of tortious interference with prospective economic advantage based on its loss of the opportunity to lease ABC's space to Leisure World in timely fashion. The Court denies the motion. First, the motion was not made until after the close of discovery, and ABC persuasively argues that if the amendment were allowed, additional discovery would be required to permit ABC to defend the claim. Federal Rule of Civil Procedure 15 does not require a court to permit an untimely amendment if to do so would unduly delay the proceedings or if the opposing party would be unfairly prejudiced. *See, e.g., Park v. City of Chicago,* 297 F.3d 606, 613 (7th Cir. 2002) (delay

plus unfair prejudice to defendant may justify denial of leave to amend); *Clay v. City of Chicago Department of Health*, 143 F.3d 1092, 1094 (7th Cir. 1998) (affirming denial of leave to amend to add a new theory of liability after discovery had closed). *See generally Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."). Second, the proposed amendment would be futile. As ABC argues, a tortious interference claim requires proof of conduct directed by the defendant to a third party, in this case Leisure World. *See, e.g., Douglas Theatre Corp. v. Chicago Title & Trust Co.*, 266 Ill. App. 3d 1037, 1047, 641 N.E.2d 584, 590 (1994). Oak Creek asserts nothing of the kind in its proposed amendment, and based on the materials the Court reviewed as part of the summary judgment motion, it does not appear that there is any evidence that ABC directed any conduct or had any communications with Leisure World.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment [docket # 14-1] and plaintiff's motion for leave to amend [docket # 20-1, 20-2]. The case is set for a status hearing on June 29, 2004 at 9:30 a.m. for the purpose of setting a prompt trial date. Trial counsel are directed to appear.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 21, 2004